**EAST VALLEY INJURY LAW**
1525 South Greenfield Road
Mesa, Arizona 85206
(480) 542-5000
Robert L. Greer (SBN 005372)
rlgreer@evilaw.com

**SAUCEDO HARRIGAN APODACA**
**GRIESMEYER APODACA PC**
800 Lomas Blvd. NW, Suite 200
Albuquerque, NM 87102
(505) 338-3945
Christopher T. Saucedo (pro hac vice)
Daniel C. Apodaca (pro hac vice)
chris@shalawnm.com
daniel@shalawnm.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Griselda Sanchez, individually and on behalf of all statutory beneficiaries of Levi Sanchez-Henry, deceased | Case No.: 3:23-cv-08117-JJT |
| Plaintiffs, | **MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD PUNITIVE DAMAGES CLAIM** |
| vs. | |
| Lily Transportation Corp., Andrew Barrett, a single man. | |
| Defendants. | |

COME NOW, the Plaintiffs, by and through undersigned counsel, and as authorized by Rules 15 and 16 of the Federal Rules of Civil Procedure, hereby moves this

1

Court for leave to file the proposed First Amended Complaint attached hereto as "Exhibit A," for the purpose of adding claims for punitive damages. Opposing counsel has been contacted regarding the filing of the First Amended Complaint and opposes. Thus, it is further presumed that this Motion is opposed. For purposes of this Motion Plaintiffs state:

1)      This matter was initially filed on June 26, 2023, in which Plaintiffs brought claims regarding a trucking accident that occurred on December 17, 2021. (Doc. 1.)

2)      The original Complaint asserts a total of four causes of action against Defendants Andrew Barrett, and Lily Transportation, Corp: (I) Negligence against Barrett and Lilly Transportation; (II) Negligence Per Se against Barrett and Lily Transportation; (III) Negligent Hiring, Training, and Supervision Against Lily Transportation; and (IV) Negligent Entrustment Against Lily Transportation. The original complaint sought compensatory damages for Defendants' violations.

3)      Under this Court's original October 19, 2023 Scheduling Order, Motions to amend the Complaint and to join additional parties were to be filed by November 17, 2023. (Doc. 21.)

4)      On May 24, 2024, this Court entered an Amended Order, in which the fact discovery deadline has been extended to November 25, 2024. (Doc. 49.)

5)      Throughout the discovery process, Plaintiffs have sought to determine the extent of the underlying actions of Defendant Barrett which caused the accident that is the subject of the Complaint, and have further attempted to determine to what extent Defendant Lilly Transportation was aware of any issues of Mr. Barrett as part of their discovery.

6)      On June 26, 2024, this Court entered an Order in which it was ordered that Defendant Lily were to provide certain videos and tagged "events" of Mr. Barrett's driving, along with the cell phone that Mr. Barrett was using on the date of the accident for limited inspection. (Doc. 78.)

7)      On July 23, 2024, Defendant Lilly produced its Seventh Supplemental Disclosure Statement in which the videos and tagged events of Mr. Barrett's driving were produced to Plaintiffs for the first time in this matter.

8)    Thus, on July 23, 2024, Plaintiffs were able to obtain evidence, for the first time in this matter, to show a driving practice and history of inattentive driving of Mr. Barrett.

9)    The video documentation provided by Lily shows that from October 27, 2021, through the date of the accident (December 17, 2021), Mr. Barrett had a total of 116 recorded incidents, of which 41were for inattentive driving, and the last one being the fatal accident that is the subject of this litigation.

10)   During his deposition, Mr. Barrett was specifically asked if he had ever been disciplined or given corrective action for any driving activity that was observed by the camera recording system, to which he responded that he had not.

11)   Documentation further provided by Lily as part of their Seventh Supplemental Disclosure included various logs of the noted driving events of Mr. Barrett. Each driving event notes that it was "coached" by Lily Transportation General Manager Michael Reardon.

12)   Thus, to determine to what extent Mr. Barrett may or may not have actually been "coached" by Lily on the recorded incidents, Plaintiffs have sought the deposition of Mr. Reardon as far back as August 2024.

13)   Plaintiff's expert, Mr. David Stopper, has concluded that in his expert opinion, that "Lily Transportation received numerous alerts through their Samsara Drive Cam system of driver safety violations by Mr. Barrett. Lily Transportation failed to respond to those numerous reports up to the time of this fatal crash which included distracted driving and following to close. Those records indicate Mr. Barrett was 'coached' by Michael Reardon, however, he testified he was never coached by Lily on any driver safety violations. In this failure to supervise, it is my opinion Lily Transportation *exhibited a conscious indifference to the safety of the motoring public.*"

14)   For various reasons, including the requests of Defense counsel, the deposition of Mr. Reardon has continued to be delayed. As of the date of this Motion, the deposition of Mr. Reardon is set for December 6, 2024. *See* Doc. 111.

15)    Plaintiffs further believe that punitive damages may be available to them due to the actions of Mr. Barrett on the date of the subject accident. It is without question that in the minutes leading up to the subject accident, Mr. Barrett is engaged with and is distracted by the use of his cell phone. This is confirmed by the in-cab camera footage that was provided by Lily. What is not known, and what we now know will never be known, is what was occurring on Mr. Barrett's cell phone to the point where he became so distracted he did not see Plaintiff's vehicle in the roadway until roughly one second before impact.

16)    As previously mentioned, this Court ordered Mr. Barrett to produce the cellphone he was using on the date of incident for limited inspection into a two-and-a-half-hour period prior to the accident. (Doc. 78).

17)    After a lengthy delay, the cell phone of Mr. Barrett that was purported to have been used on the date of the incident was provided to Plaintiff's retained cell phone expert on July 18, 2024.

18)    Following a limited inspection by Plaintiff's expert, Mr. John Carney, it was determined that the cell phone is missing virtually all data, including text history, call logs, and data usage, for the time period in question.

19)    This issue of the missing cell phone data was brought to the attention of this Court during an August 30, 2024 hearing. As part of this hearing, Defendants explained that the cell phone that was produced (a Motorola One 5G UW) by Mr. Barrett was not the cell phone that was in his possession during the date of the subject accident, and that he may have instead turned that cellphone into Verizon sometime in June of 2023.

20)    This Court ordered that Plaintiffs were allowed to seek information via a subpoena to Verizon regarding the date of usage of the various cellphones of Mr. Barrett. (Doc. 94).

21)    On October 23, 2024, Plaintiffs received a response to the Verizon Subpoena. As part of that subpoena response, Verizon produced a spreadsheet showing that the only Motorola One 5G UW that Mr. Barrett ever had active, was active from

4

September 13, 2021, through November 4, 2022, and thus was the cell phone that was active on the date of the incident (December 17, 2021).

22) Plaintiffs provided Defendants a copy of the Verizon Subpoena immediately upon receipt and have been working with Defendants to provide a joint notice as to what the Verizon Subpoena has exposed pursuant to this Court's Minute Order (Doc. 94). Defendants have continued to push back on producing this joint notice indicating their expert needs additional time with the Subpoena records.

23) With the Verizon Subpoena showing that the phone in use by Mr. Barrett on the date of question was the Motorola 5G UW that had previously been produced, Plaintiffs believe this is clear evidence that Mr. Barrett intentionally and purposefully wiped all data from the cell phone for the date of the incident. Plaintiffs will be asking the Court for additional relief through that discovery process to allow their expert to determine just how far Mr. Barrett has gone in his attempt to wipe his phone of evidence.

24) Plaintiffs anticipate that the wiping of his phone will lead to a spoliation instruction being provided to the jury. Because of Mr. Barrett's intentional actions of destroying all evidence on his phone on the date of the incident, Plaintiffs have become handcuffed in arguing to the jury that the actions of Mr. Barrett rose to a level sufficient to establish punitive damages.

25) As such, Plaintiffs believe that a jury may find, though a spoliation inference, that Mr. Barrett was watching videos, or perhaps something more sinister, and that his actions rise to a level beyond simple gross negligence or reckless disregard, but were instead outrageous, oppressive or intolerable and otherwise created a substantial risk of tremendous harm, which in this case was the untimely death of Mr. Levi Henry-Sanchez, and the life changing personal injuries of Griselda Sanchez.

26) Thus, out of a balance of providing sufficient evidence to establish that the claim of punitive damages in this matter is not futile, while respecting the need to formally amend the Complaint in this matter to avoid undue delay, Plaintiffs believe that now is the appropriate time to formally amend the Complaint to add a claim of punitive damages as to Counts I, III and IV of the Complaint.

27)    Should this Court grant this Motion, no party will be prejudiced by the amending of the complaint. Defendants have been aware of the extent of Mr. Barrett's driving history, and presumably their history or lack thereof of monitoring Mr. Barrett at least as far back as their Seventh Supplemental Disclosure on July 23, 2024. Further, as of Plaintiffs' expert disclosure on August 2, 2024, Defendants were aware that Mr. Stopper's opinions included that Lily exhibited a conscious indifference to the safety of the motoring public. Despite this disclosure, Defendant has taken no actions or otherwise sought to seek the deposition of Mr. Stopper to further understand the basis and rationale of this opinion. Further, by bringing this Motion now, Plaintiffs are putting Defendants on notice of the potential claim of punitive damages, and Defendants will have until December 20, 2024, to conduct discovery, including the deposition of Mr. Stopper, on the issue of punitive damages. *See* Doc. 56.

28)    If Plaintiffs were to establish through the presentation of the recorded video "events," the event log, the testimony of Mr. Barrett, the testimony of Mr. Reardon, and the expert testimony of Mr. Stopper that Lily was aware of the extent of inattentive driving of Mr. Barrett, and the lack of response by Lily of that inattentive driving, punitive damages will be appropriate to present to a jury. This evidence would show that Lily was aware of a known dangerous condition of Mr. Barrett's inattentive driving, and chose to ignore those concerns, causing a conscious indifference to the safety of the motoring public.

WHEREFORE, Plaintiffs respectfully requests that this honorable Court grant them leave to file the proposed First Amended Complaint attached to this Motion as Exhibit "A" and award such other relief as this Court may deem just and proper.

### MEMORANDUM OF LAW

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court should grant leave to amend freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). The language "when justice so requires" has been interpreted to allow an amendment, if none of the following factors is present: (1) undue delay; (2) bad faith or dilatory

motive by the moving party; (3) repeated failures to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; or (5) futility. *See Foman v. Davis*, 31 U.S. 178, 192 (1962); *see also Penn Galvanizing Co. v. Lukens Steel Co.*, 65 F.R.D. 80 (E.D. Pa. 1974) (noting the court's preference for deciding cases on the merits, rather than on procedure). When a motion for leave to amend a pleading is filed after the deadline for amendments set forth in the Rule 16 scheduling order, then the party seeking to amend must meet the requirements of not only Rule 15(a)(2), but also Rule 16(b)(4), which requires a showing of "good cause" and leave of court to modify the scheduling order. *See, e.g.*, *DRK Photo v. McGraw-Hill Global Educ. Holdings, LLC*, 870 F.3d 978 (9th Cir. 2017).

"Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 271 U.S. 178, 182 (1962). "In exercising its discretion[,]…a court must be guided by the underlying purpose of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities…[t]hus, Rule 15's policy of vaporing amendments to pleadings should be applied with extreme liberality." *Eldridge v. Block,* 832 F.2d 1132, 1135 (9th Cir. 1987) (internal citation omitted).

In the matter before this Court, the initial Scheduling Order required that all motions to amend the pleading be filed no later than November 17, 2023. (Doc. 21). Fact discovery remains open until November 25, 2024, and the final discovery deadline in this matter is set for December 20, 2024. (Doc. 56). Plaintiffs assert that there has been no undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies, of futility in their efforts to bring the First Amended Complaint, nor would there be undue prejudice Defendants in allowing the First Amended Complaint to be brought. Further, because the factual basis necessary to establish their punitive damages claims was not known, until recently Plaintiffs, pursuant to Rule 16(b) have good cause for not seeking leave to amend prior to the deadline for amending pleadings.

### 1. *No undue delay*

Delay, in and of itself in filing a request for leave to amend is only one factor considered when determining whether to allow a request for leave to file an amended complaint, and does not, by itself support a denial of leave to amend. *See Datascope Corp. v. SMEC, Inc.* 862 F.2d 1045 (N.J. 1992) (holding that delay alone is not sufficient do deny leave, but "undue delay" is sufficient).Thus, courts, in using their discretion, tend to favor granting a party leave to amend when that request for amendment comes during or promptly after discovery proceedings have ended, and the amendment seeks to introduce previously unknown facts, or a modified legal theory. *See Conte v. Jakks Pacific, Inc.*, 981 F. Supp 2d 895 (E.D. Cal. 2013) (noting the difference in delay when a request for amendment is made while discovery is open as compared to when discovery has closed).

There has been no undue delay by Plaintiffs in seeking to file the First Amended Complaint. As shown above, the discovery process in this matter has been evolving at an extremely slow pace, with Defendants preventing access to much of the necessary discovery on the issue of punitive damages. On July 23, 2024, Plaintiffs were provided for the first time, video documentation and log documentation regarding Mr. Barrett's extensive poor driving history. That information was analyzed by Plaintiffs' expert in August 2024 and a report was made for the first time indicating that Defendant Lily exhibited a conscious disregard for the safety of the public, and thus punitive damages may be available. Further, Plaintiffs have, through the assistance of this Court, continued to press Defendants regarding the use of Mr. Barrett's cell phone to determine what exactly Mr. Barrett was interacting with on his cell phone at the time of the accident. Though the evidence is continuing to be gathered on this issue, as a result of Plaintiffs receiving the Verizon subpoena on October 23, 2024, Plaintiffs now believe there is enough evidence to move forward with a claim of punitive damages as to Mr. Barrett. As soon as the information sufficient to amend was learned, Plaintiffs' counsel

immediately began preparing this Motion and prepared to file the First Amended Complaint. As such, and because the factual basis for the punitive damages claims was discovered within roughly a two-week time frame of this Motion, there has been no undue delay. Further, should the proposed amendment be granted, this would not cause a delay in the trial of this action. The Fist Amended Complaint seeks to simply assert that punitive damages should be available, along with the compensatory damages already claimed in Counts I, III, and IV of the Complaint. The only need for additional discovery on this topic, would be the depositions of Defendants' corporate representatives, which have been set, and the further exploration by both parties' experts on the issue of the lost data from the cell phone of Mr. Barrett, of which the parties have been fully aware of this issue. Further, because this request is made several days prior to the deadline for completing discovery, there is sufficient time for either party, including Defendants, to conduct any additional discovery they feel necessary.

### 2. *No bad faith or dilatory motive*

Leave is more liberally granted in the absence of bad faith or dilatory motive in seeking to leave to amend. *See C.F. v. Capistrano Unified Scho. Dist.,* 654 F.3d 975 (9th Cir. 2011). When determining whether bad faith or dilatory motive is present, courts are to look at the circumstances surrounding the motion for leave to amend, the court record, and the proposed amendment itself. *See Waldrip v. Hall*, 548 F.3d 729 (9th Cir. 2008). Courts have held that an amendment will not be granted when there is evidence that the claims are baseless or are being used as merely a delay tactic. *See Johnson v. Runnels,* 2009 U.S. Dist. LEXIS 25527 (E.D. Cal. 2009) (holding "the court will not [allow the motion] without having facts demonstrating that this is more than a fishing expedition or a delay tactic.").

In the matter before this Court, there is no bad faith or dilatory motive. Instead, this Motion is based on the recently discovered information regarding the extensive poor driving history of Mr. Barrett, Lily's complete lack of control over Mr. Barrett despite

having ampule information on the issue, and Mr. Barrett's attempts to hide the truth from the fact finders in this matter. The additional claims are brought after careful consideration and preparation, and are not being done as a delay tactic or fishing expedition.

### 3. No repeated failures to cure pleading deficiencies by prior amendments

When deciding whether to allow leave to amend a complaint, courts will also consider whether there has been any repeated failure to cure pleadings by deficiencies by prior amendments. Here, Plaintiffs are bringing this Motion as the first, and likely only attempt to amend the pleadings in this matter. There have not been any prior failures by Plaintiffs to cure pleading deficiencies by amendment. This Court should therefore use its discretion and grant Plaintiffs leave to file the proposed First Amended Complaint attached hereto as Exhibit A, and to allow the assertion of punitive damages in Counts I, III, and IV.

### 4. No undue prejudice

A fourth factor courts consider is whether the proposed amendment itself would cause undue prejudice to the opposing party. *See Manriquez v. City of Phoenix*, 654 Fed. Appx. 350 (9th Cir. 2016) (focusing on prejudice to the opposing party when seeking to amend the district court's scheduling order); *Rouse v. Farmers State Bank*, 866 F. Supp. 1191 (N.D. Iowa 1994) (emphasizing the importance of the amendment in not reopening pleadings, adding additional discovery and trial preparation, or continuing the trial date). However, courts must balance this factor with what is necessary in order "to prevent irreparable loss to one of the parties . . . ." *Atlantic Seaboard Corp. v. Federal Power Commission*, 201 F.2d 568 (4th Cir. 1953).

If allowed, Plaintiffs' proposed amendment would not cause undue prejudice to the Defendants in this matter. First, and foremost, the proposed amendment does not bring forth any new claims, but instead adds additional potential damages available in this matter. As such, there would be no need for additional formal discovery to be

conducted by Defendants in this matter as to the mindset of himself (Mr. Barrett) or its employes (Lily). In fact, if there are any disputes as to the mindset of Lily's corporate representatives, depositions are already set in this matter for December 5th and 6th for the two representative of Lily whose testimony most directly impacts the claims of punitive damages, including Mr. Michael Reardon who is alleged to have been in charge of any "coaching" of Mr. Barrett for his improper driving behaviors. Thus, there is no need for the expansion of any discovery deadlines.

Further, the issue of a possible claim for punitive damages was raised in the Original Complaint. In the Complaint, Plaintiffs allege that Mr. Barrett "was driving carelessly, recklessly, and with wanton disregard for the safety of others at time of the accident." *See* Doc. 1, ¶40. Finally, granting leave would actually prevent prejudice in this matter as it would prevent irreparable loss by potentially preventing Plaintiff from asserting claims for their full extent of damages in this matter, including punitive damages.

### 5. *Proposed amendment is not futile*

Courts must also look at whether a proposed amendment would be futile in addressing whether it is appropriate to grant leave. To do so, a Court should determine whether a proposed amendment is clearly insufficient or frivolous on its face or would otherwise fail on a motion to dismiss for failure to state a claim. *See Enhance-It, LLC v. American Access Technologies, Inc.*, 413 F. Supp 2d 616 (D. S.C. 2006) (holding that the amendment must be clearly insufficient or frivolous on its face to be denied for futility). In a scenario where leave has been sought prior to the completion, and where no party has moved for summary judgment, as is the case before this Court, a proposed amendment is futile only if it fails to set for a scenario, which if proven, would entitle the moving party for relief on a theory of the case. *See Atencio v. Arapaio*, 2013 U.S. Dist. LEXIS 173195 (D. Ariz. 2013). If a moving party has colorable grounds to support

its claims, the leave to amend should be granted in the interest of justice. *See Williams v. Clark,* 2015 U.S. Dist. LEXIS 139794.

Plaintiffs' proposed amendment is not futile. As shown above, the recently discovered facts obtained though discovery support the claims that Defendants' actions rose to a level where they have "created a substantial risk of tremendous harm" though a "conscious and deliberate disregard of the interests and rights of others." *See Swift Tans. Co. v. Carman*, 235 A.Z. 499, 506, 515 P.3d 685, 692 (2022). The proposed First Amended Complaint is not clearly insufficient or frivolous on its face to show the availability of punitive damages on this claim, and thus granting the proposed amendment would not be futile.

### 6. *Plaintiffs have good cause for not seeking leave to amend prior to the expiration of the Scheduling Order deadline to amend.*

Federal Rule of Civil Procedure 16(b)(4) provides that deadlines in the Scheduling Order "may be modified only for good cause and with the judge's consent." In evaluating whether good cause is present, courts will consider four factors: (a) the explanation provided for the movant's failure to timely move for leave to amend prior to the expiration of the deadline; (b) the importance of the amendment; (c) any potential prejudice that might result in allowing the amendment; and (d) whether a continuance is available to cure any resulting prejudice. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1026 (9th Cir. 2006). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v Mammoth Recreations, Inc.* 975 F.2d 604, 609 (9th Cir. 1992). "What constitutes good cause necessarily varies with the circumstances of the case." *Gonzales v. Douglas,* 2016 U.S. Dist. LEXIS 116423 (D.Ariz. 2016) (internal citations omitted).

As previously shown, in the matter before this Court, Plaintiffs have acted diligently in pursuing their potential claims for punitive damages. Plaintiffs were unable to move for punitive damages until evidence was uncovered to show the "evil mind" of

Defendants. As of the original deadline for Plaintiffs to move to amend the complaint, the evidence regarding Lily's failures to monitor Mr. Barrett, and the evidence of Mr. Barrett's destruction of evidence had not yet been discovered. The proposed amendment to the Complaint is vital to Plaintiffs' case as it would permit the Court and a jury in this matter to award damages beyond the compensatory damages available, and instead allow for damages to punish and deter Defendants for their evil actions. On the other hand, denying the proposed amendments would award Defendants for their continuous efforts to stall the discovery efforts of Plaintiff, and hide and destroy evidence in this matter. Further, as previously noted, there would not be any prejudice to Defendants if Plaintiffs are permitted leave to amend. There would be no additional discovery from Defendants to determine the extent and scope of their own actions. However, if discovery were needed, the deadlines in this case have not ran and Defendants can obtain the discovery they deem necessary on the issue.

In conclusion, granting Plaintiff leave to amend the complaint to add claims of punitive damages would not abuse the integrity of the Scheduling Order, or the need for discovery in this matter. Plaintiffs have diligently pursued information sufficient to establish a factual baseline on their claim of punitive damages and have just only recently obtained a sufficient amount of evidence, so the claims are not futile or meritless. Plaintiffs would suffer no prejudice if the proposed amendment were allowed, and if there was any such prejudice, it is minimized by Defendant's ability to continue to conduct discovery in this matter. Instead, granting this motion would further the spirit of Rule 15 of granting leave "freely when justice so requires." This is especially true of the scenario here where there is evidence to suggest that a defendant, Mr. Barrett has intentionally destroyed evidence as to his mindset during the moments leading up to the fatal accident.

RESPECTFULLY SUBMITTED this 8th day of November 2024.

13

**SAUCEDO HARRIGAN APODACA GRIESMEYER APODACA PC**

By: */s/Christopher T. Saucedo*
Christopher T. Saucedo
Daniel C. Apodaca
800 Lomas Blvd NW, Suite 200
Albuquerque, NM 87102
(505) 338-3945
chris@shalawnm.com
daniel@shalawnm.com

***Attorney for Plaintiffs***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 8th day of November, 2024, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

By: *<u>/s/ Christopher T. Saucedo</u>*
        Christopher T. Saucedo

14

EXHIBIT A

**EAST VALLEY INJURY LAW**
1525 South Greenfield Road
Mesa, Arizona 85206
(480) 542-5000
Robert L. Greer (SBN 005372)
rlgreer@evilaw.com

**SAUCEDO HARRIGAN APODACA**
**GRIESMEYER APODACA, PC**
**800 Lomas Blvd. NW, Suite 200**
**Albuquerque, NM 87102**
**(505) 338-3945**
**Christopher T. Saucedo (pro hac vice)**
**Daniel C. Apodaca (pro hac vice)**
**chris@shalawnm.com**
**daniel@shalawnm.com**
*Attorneys for Plaintiffs*
~~SAUCEDO CHAVEZ, P.C.~~
~~800 Lomas Blvd. NW, Suite 200~~
~~Albuquerque, NM 87102~~
~~(505) 338-3945~~
~~Christopher T. Saucedo (pro hac vice, pending)~~
~~Daniel C. Apodaca~~
~~csaucedo@saucedochavez.com~~
~~dapodaca@saucedochavez.com~~
*~~Attorneys for Plaintiffs~~*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Griselda Sanchez, individually and on behalf of all statutory beneficiaries | Case No.CV-23-08117-PCT-JJT |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| vs. | |
| Lily Transportation Corp., Andrew Barrett, a single man. | |

1

EXHIBIT A

1    Defendants.

2    _____

3    Plaintiff Griselda Sanchez, individually and on behalf of other statutory

4    beneficiaries pursuant to A.R.S. §12-612 for her complaint against Lily Transportation

5    Corporation ("Lily") and Andrew Barrett alleges:

6

7                              **NATURE OF THE ACTION**

8    1.    This matter involves the tragic death of Mr. Levi Sanchez-Henry in the

9    early morning of December 17, 2021.

10   2.    On that awful morning, Mr. Sanchez-Henry was returning home to

11   Albuquerque, New Mexico with his mother, Griselda Sanchez, after visiting family and

12

13   buying a puppy in the Los Angeles, California area.

14   3.    Levi Sanchez and Griselda Sanchez were driving eastbound on I-40 near

15

16   mile marker 134 when Griselda Sanchez drifted left toward the median in Levi's 2013

17   red Lexus ES350, over-corrected after leaving the roadway, and ultimately struck a right

18

19   side guardrail which caused the vehicle to rotate and come to a rest facing westbound.

20   4.    Levi, who was asleep in the back seat of the vehicle during the initial crash,

21   confirmed with his mother that he was fine, that he was glad no one was hurt, and that

22

23   despite his vehicle being clearly damaged, he was not angry at his mom.

24   5.    When the initial crash was over, both Levi and Griselda were physically

25   fine, though emotionally shaken. They both began to get out of the vehicle to the safety

26   of the roadside and to call for help.

27   6.    Neither Levi nor Griselda ever reached that safety.

28

2

EXHIBIT A

7.     Unbeknownst to Levi and Griselda, further behind them on I-40 heading eastbound was a red tractor-trailer combination that weighed in excess of 26,000 lbs. operated by Lily Transportation and driven by Andrew Barrett.

8.     Mr. Barrett had switched into the driver's seat of the semi-truck earlier that morning, December 17, 2021 replacing his partner. Mr. Barrett was returning from California to Tennessee to drop off the trailer.

9.     As Mr. Barrett approached the area of mile marker 134, he noticed what appeared to be a "bright white light" in his lane in the roadway ahead. During this time Mr. Barrett was traveling at seventy-three (73) miles per hour.

10.     For the roughly next ten to fifteen seconds after initially spotting the "bright white light," Mr. Barrett made no efforts to slow his trailer, move into the adjacent lane, or otherwise take caution as he quickly approached that light.

11.     Instead, Mr. Barrett decided to remain distracted by continuing to look downward near the floorboard of the cab of the semi-truck he was driving.

11.12. As he approached the site of the initial accident, Mr. Barrett remained distracted by searching for a water battle and drinking water, engaged with an electronic device now understood to be a cell phone, wiped his mouth, and otherwise diverted his attention from the task of driving.

12.13. Upon information and belief, it is believed that Mr. Barrett was either watching a video or otherwise using an electronic device while driving.

3

EXHIBIT A

13.14. Due to his distracted driving, Mr. Barrett was unable to properly recognize and assess that the vehicle containing Levi and Griselda had come to rest in the right hand lane of eastbound I-40, nor to slow his truck.

14.15. As Levi unbuckled from the back seat, and as Griselda was stepping out of the driver's seat onto the shoulder of the interstate, Mr. Barrett's semi-truck collided head on with the red Lexus.

15.16. The truck driven by Mr. Barrett was traveling 73 miles per hour at the time of impact. Mr. Barrett did not begin to apply his breaks until after the collision. Mr. Barrett eventually swerved off the right side of the interstate, eventually having his truck come to rest in a field.

16.17. As a result of this collision, Griselda was pushed away from the vehicle and suffered severe injuries.

17.18. The force of this collision ejected Levi through the front windshield of the Lexus, crashed into the front end of the semi-truck one of the passenger side windows, then hurled an estimated 20 yards to his final resting place.

18.19. Levi died as a result of the accident caused by the semi-truck.on impact.

19.20. As a result of her severe injuries resulting from the collision with the semi-truck Griselda was flown to the hospital for immediate emergency care.

20.21. As a result of the accident, Griselda spent nine months in various hospitals in Arizona and New Mexico, as well as multiple rehabilitation centers.

22.    Though her life was spared, Griselda has suffered permanent and life altering injuries including the ability to breathe only through a trachea tube.

4

EXHIBIT A

21. 23. To date, Griselda suffers from continued medical episodes related to the subject accident, and is often required emergency hospitalization.

22. 24. As a further result of the injuries from the collision with Defendants' truck, Griselda cannot use her vocal cords. Griselda is essentially mute.

**PARTIES**

23. 25. Levi Sanchez Henry was a citizen of Bernalillo County, New Mexico.

24. 26. Griselda Sanchez is a citizen of Bernalillo County, New Mexico and was the mother of Levi-Sanchez Henry.

25. 27. Griselda Sanchez brings her claim individually as to her personal damages, and as a statutory beneficiary to the claim for the wrongful death of Levi pursuant to A.R.S. §12-612.

26. 28. Darnell "Peter" Henry is a citizen of Maricopa County, Arizona and is the father of Levi Sanchez-Henry, and statutory beneficiary in the wrongful death claim of Levi pursuant to A.R.S. §12-612.

27. 29. Upon information and belief, Defendant Andrew Barrett is a citizen of Chattanooga, Tennessee.

28. 30. Upon information and belief, Defendant Lily Transportation is a citizen of Massachusetts, incorporated in that state with its principal place of business at 145 Rosemary Street, Needham, MA 02494. Its DOT Number is 24491.

29. 31. At all times relevant to this matter Defendant Barrett was an employee of Defendant Lily Transportation and was driving a semi-tractor and trailer owned and

5

EXHIBIT A

operated by Lily Transportation, in the scope of his employment with Lily Transportation at the time of the accident in question.

~~30.~~32. At all times relevant to this matter, Defendant Lily Transportation was the employer of Defendant Barrett and is vicariously liable for his actions.

**JURISDICTION AND VENUE**

~~31.~~33. The accident that is the subject of this Complaint occurred in Yavapai County, Arizona.

~~32.~~34. Plaintiffs seek damages in excess of seventy-five thousand dollars ($75,000).

~~33.~~35. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332.

~~34.~~36. The accident in question occurred within the jurisdiction of the United States District Court for the District of Arizona.

37.    This Court has jurisdiction over the parties and the subject matter of this litigation.

**The Distracted Driving of Barrett and Lily's Failure to Monitor**

38.    On the date of the subject accident, Mr. Barrett was driving a 2019 Volvo model VNL 3-axle truck tractor (the "Subject Tractor.")

39.    The Subject Tractor was leased to and was operating under the authority of Defendant Lily.

40.    One the date of the subject accident, the Subject Tractor was equipped with a Samsara Drive Cam system.

| Formatted: Font: Bold, Underline |
| Formatted: Centered, No bullets or numbering |

6

EXHIBIT A

41.    The Samsara Drive Cam system, amongst other features, would monitor the driving behaviors and practices of the driver, and would be able to capture dash cam footage showing both a front facing view of what a driver saw, as well as video footage of the cab including a view of the driver.

42.    The Samsara Drive Cam system would further alert Lily's management of any harsh driving behaviors occurring in the Subject Tractor, including an accident, following distance issues, inattentive driving, mobile phone usage, speeding, and lane departure.

43.    For the period of October 27, 2021, through December 21, 2021 (the date of the subject accident) the Samsara Drive Cam system captured footage, and reported to Lily a total of 116 recorded incidents involving Mr. Barrett, including 41 instances of inattentive driving.

44.    The last recorded incident of Mr. Barrett's driving behaviors from the Samsara Drive Cam system was the distracted driving/recorded accident which led to the fatal accident that is the subject of this litigation.

45.    Despite having a documented 116 recorded incidents triggered by the Samsara Drive Cam system for a roughly two-month time period, at no point in his driving career was Mr. Barrett disciplined or given any corrective action related to the activities that were observed by the Drive Cam system.

46.    Despite having been provided with a log of the recorded incidents from the Samsara Drive Cam system prior to the subject accident, Defendant Lily failed to respond

7

EXHIBIT A

1  to, follow up with, or otherwise speak with Mr. Barrett about his driving practices prior to

2  the fatal crash.

3       47.    As Defendant Lily received numerous alerts through the Samsara Drive

4  Cam system of driver safety violations by Mr. Barrett, and because Defendant Lily then

5  made no efforts to address, monitor, or correct the noted potential safety violations, and

6  because it otherwise failed to respond to those numerous alerts, Defendant Lily has failed

7  to supervisor Mr. Barrett. In doing so, Defendant Lily has exhibited a conscious

8  indifference to the safety of the motoring public.

9       48.    Equally concerning of Lily's conscious indifference to the safety of the

10  motoring public, is Mr. Barrett's deliberate attempts to destroy evidence of his driving

11  behaviors.

12       49.    During the hours leading up to the accident that is the subject of this

13  Complaint, there is video evidence that Defendant Barrett interacted on multiple

14  occasions with his cell phone. These interactions include making at least one phone call

15  to his wife while driving and playing and shuffling music on Spotify.

16       50.    However, at some point after the subject accident, Defendant Barrett made

17  a conscious decision to "wipe" or otherwise delete all potential evidence on his phone

18  regarding the subject accident, and the events which led up to the accident.

19       51.    As confirmed by documentation provided by Verizon Wireless, on the date

20  of the accident Mr. Barrett was using a Motorola One 5G UW phone.

8

EXHIBIT A

52.    That Motorola One 5G UW phone was provided to and examined by Plaintiffs.  A forensic analysis of Mr. Barrett's phone has shown that virtually no data exists for the two-and-a-half-hour period leading up to the Subject Accident.

53.    The missing data goes beyond potentially deleted text and call logs, but the data missing would also show how, and to what extent Mr. Barrett was engaged with various apps, or other uses of mobile data.

54.    Upon information and belief, Defendant Barrett intentionally and purposefully wiped all data from the cell phone he was using on the date of the subject accident, in order to cover up or otherwise prevent a jury in this matter form knowing the full extent of his cell phone usage on the date of the accident.

55.    Upon information and belief, on the date of the subject accident, Mr. Barrett was distracted from his driving either through watching videos, or perhaps something more sinister; the full extent of Mr. Barrett's distractions may never fully be known due to his intentional destruction and spoliation of evidence.

35.56. As evident by Mr. Barrett's conscious and intentional decision to destroy the documented data of his actions on the date of the subject incident, Defendant Barrett's inattentive driving rose to a level beyond simple or gross negligence, but instead was outrageous, oppressive or intolerable which otherwise created a substantial risk of tremendous harm to the general public, and specifically to Plaintiffs.

## COUNT I

**Negligence Against Barrett and Lily Transportation**

9

EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

36.57. The allegations contained in the preceding paragraphs are re-alleged as if fully set forth herein.

37.58. At all times relevant to the allegations in this Complaint, Mr. Barrett acted in his capacity as an employee and agent of Lily Transportation and within the scope of his employment with Lily Transportation. Lily Transportation is therefore vicariously liable, under the doctrine of respondeat superior, for the negligent actions of Mr. Barrett.

38.59. Mr. Barrett and Lily Transportation owed a duty to the general public, and specifically to Plaintiffs, to operate the semi-truck in a reasonable manner with ordinary care.

39.60. As more fully explained above, Mr. Barrett and Lily Transportation breached this duty by failing to use ordinary care in the operation of the semi-truck owned by Lily Transportation, ultimately resulting in the fatal accident that is the subject of this Complaint.

61.    As more fully explained above, Mr. Barrett was driving carelessly, recklessly, and with wanton disregard for the safety of others at the time of the accident.

40.62. As more fully explained above, Mr. Barrett's inattentive driving and actions on the date of the subject accident were outrageous, oppressive, and intolerable, which otherwise created a substantial risk of tremendous harm to the general public, and specifically to Plaintiffs.

41.63. Plaintiffs' injuries and damages, including the death of Levi, were a direct and proximate result of the negligence of Mr. Barrett and Lily Transportation.

10

EXHIBIT A

64.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be proven at trial.

42.65. As a result of Mr. Barrett's actions, combined with his "evil mindset," Plaintiffs are entitled to punitive damages.

## COUNT II

**Negligence Per Se Against Barrett and Lily Transportation**

43.66. The allegations contained in the preceding paragraphs are re-alleged as if fully set forth herein.

44.67. At the time of the accident in question, existing state and federal ordinances, regulations, and laws prescribed certain actions and defined standards of conduct either explicitly or implicitly, related to the proper operation of a motor vehicle, and more specifically a semi-truck on public roads. These ordinances, regulations, and laws were enacted for protection and safety of the public.

45.68. These ordinances, regulations, and laws include, amongst other standards, require commercial drivers to keep a proper lookout, to avoid driving recklessly or carelessly, to observe the flow of traffic, to have required skills and knowledge, and to drive only at a reasonable and prudent speed.

46.69. Mr. Barrett and Lily Transportation violated those ordinances, regulations, and laws, including but not limited to, by driving the semi-truck in question while failing to keep a proper lookout, while driving recklessly or carelessly, by failing to properly assess and observe the flow of traffic, by failing to have and use the required knowledge and skills, and by failing to drive only at a reasonable and prudent speed.

11

EXHIBIT A

47.70. The injuries caused to Levi and Griselda are generally the type of injuries that the State of Arizona and/or other governmental entities sought to prevent in the enactment of those ordinances, regulations, and laws.

48.71. Plaintiffs were in the class of individuals that were intended to be protected by the ordinances, regulations, and laws violated by Defendants.

49.72. Plaintiffs' injuries and damages, including the death of Levi, were a direct and proximate result of the negligence per se of Mr. Barrett and Lily Transportation.

50.73. As a result of Defendants' negligence per se, Plaintiffs have suffered damages in an amount to be proven at trial.

## COUNT III

**Negligent Hiring, Training, and Supervision Against Lily Transportation**

51.74. The allegations contained in the preceding paragraphs are re-alleged as if fully set forth herein.

52.75. Lily Transportation owed a duty to all members of the general public, including Plaintiffs to appropriately hire drivers with sufficient experience, knowledge, skill and training to properly and safely operate its commercial semi-trucks in order to prevent injury to members of the public using roads, including Levi and Griselda.

53.76. Lily Transportation breached this duty in hiring Mr. Barrett.

54.77. Lily Transportation further owed a duty to train and supervise drivers to ensure the proper and safe operation of its commercial trucks in order to prevent injuries to members of the public using public roads, including Plaintiffs.

12

EXHIBIT A

1
2
3
4        ~~55.~~78. Lily Transportation breached its duty by failing to appropriately train and
supervise Mr. Barret and ensure his proper and safe operation of its commercial trucks on
public roads.

5            79.      Lily Transportation negligently hired, trained, and supervised Mr. Barrett
6    which led to the fatal traffic collision that is the subject of this Complaint.

7            ~~56.~~80. As more fully noted above, in failing to train and supervise Mr. Barrett, and
8    his known problematic driving history, despite having been provided ample alerts and
9    information from the Samsara Drive Cam system, Lily has shown a conscious
10   indifference to the safety of the motoring public.
11
12           ~~57.~~81. Plaintiffs' injuries and damages, including the death of Levi, were a direct
13   and proximate result of Lily Transportation's failure to adequately hire, train, and
14   supervise Mr. Barrett.
15
16           82.      As a result of Lily Transportation's negligence in its hiring, training and
17   supervision of Mr. Barrett, Plaintiffs have suffered damages in an amount to be proven at
18   trial.
19
20           ~~58.~~83. As a result of Lily's conscious indifference to the safety of the motoring
21   public, which in-turn further caused Plaintiffs' damages in this matter, Plaintiffs are
22   entitled to punitive damages against Defendant Lily in this matter.
23
24
25                                      **COUNT IV**
26              **Negligent Entrustment Against Lily Transportation**
27           ~~59.~~84. The allegations contained in the preceding paragraphs are re-alleged as if
28   fully set forth herein.

13

EXHIBIT A

60.85. Lily Transportation had a duty to the general public, and to Plaintiffs specifically, to entrust its semi-trucks to only competent drivers.

61.86. Lily Transportation entrusted its semi-truck to Mr. Barrett.

62.87. As shown above, Mr. Barrett was not competent to operate the semi-truck and/or was careless and reckless in the operation of the semi-truck.

88.    Upon information and belief, Lily Transportation knew or should have known that Mr. Barrett was not competent to operate the semi-truck and/or was likely to be reckless in the use of the semi-truck.

63.89. As more fully noted above, Defendant Lily knew of Mr. Barrett's problematic driving history when it was provided with over 116 alerts and video footage from the Samsara Drive Cam system. Defendant Lily failed to take any actions to correct the problematic driving behaviors of Mr. Barrett and in doing so, Defendant Lily has shown a conscious indifference to the safety of the motoring public.

64.90. In causing the accident in question, Mr. Barrett was negligent or reckless.

65.91. Mr. Barrett's poor driving, and Lily Transportation's negligent entrustment of the semi-truck to Mr. Barret was the direct and proximate cause of Plaintiffs' injuries and damages, including the death of Levi.

92.    As a result of Lily Transportation's negligent entrustment, Plaintiffs have suffered damages in an amount to be proven at trial.

66.93. As a result of Lily's conscious indifference to the safety of the motoring public, which in-turn further caused Plaintiffs' damages in this matter, Plaintiffs are entitled to punitive damages against Defendant Lily in this matter.

14

EXHIBIT A

## **DAMAGES**

~~67.~~94. Griselda Sanchez, individually, is entitled to damages for the physical and emotional injuries she has suffered and will continue to suffer, as well as economic damages and loss of earning potential due to the negligent actions and inactions of Defendants, including:

    a.  Medical costs;

    b.  Conscious pain and suffering;

    c.  Mental anguish and suffering;

    d.  Loss of earning capacity;

    e.  Pecuniary loss; and

    f.  Loss of enjoyment of family and social life; and

~~68.~~95. Griselda Sanchez, as the mother of Levi Sanchez-Henry, is entitled to damages for a) the loss of love, affection, companionship, care, protection, and guidance since the death and in the future, b) The pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experienced in the future, c) The income and services that have already been lost as a result of the death, and that are reasonably probable to be lost in the future, d) the reasonable expenses of funeral and burial.

96.    Darnell "Peter" Henry, as the father of Levi Sanchez-Henry, is entitled to damages for a) the loss of love, affection, companionship, care, protection, and guidance since the death and in the future, b) The pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experienced in the

15

1  future, c) The income and services that have already been lost as a result of the death, and

2  that are reasonably probable to be lost in the future.

3      69.97. As a result of Defendants' behaviors as more fully explained above,

4  Plaintiffs are entitled to punitive damages in this matter.

6                    **REQUEST FOR JURY TRIAL**

7      Plaintiffs, pursuant to applicable law including Rule 38 of the Federal Rules of

8  Civil Procedure, respectfully make a demand for trial by jury of all issues herein.

10                    **PRAYER FOR RELIEF**

11     Plaintiffs pray that this Court, after a trial by jury and a judgment against

12 Defendants award Plaintiffs:

14     a.  Damages in an amount sufficient to compensate plaintiffs for their losses and

15         damages to be proven at trial;

17     a.b.      Punitive damages;

18     b.c.      Pre- and post-judgment interest;

19     c.d.      Costs incurred, and

21     d.e.      Any and all other relief the Court may deem proper.

23     DATED this 23rd day of June, 202388th day of November, 2024          | Formatted: Superscript |

25                    **EAST VALLEY INJURY LAW, PLC.**

27                    **By:** */s/ Robert L Greer*
28                          Robert L. Greer
                           1525 S Greenfield Road

                           16

EXHIBIT A

Mesa, Arizona 85206
T: (480) 542-5000
E: rlgreer@evilaw.com

-and-

**Saucedo Harrigan Apodaca**
**Griesmeyer Apodaca PC**

By: /s/      Christopher T. Saucedo
Christopher T. Saucedo
Daniel C. Apodaca
800 Lomas Blvd NW, Suite 200
Albuquerque, NM 87102
(505) 338-3945
chris@shalawnm.com
daniel@shalawnm.com
*Attorney for Plaintiffs*
And

**SAUCEDOCHAVEZ, P.C.**

By: /s/ Christopher T. Saucedo
Christopher T. Saucedo
Daniel C. Apodaca
800 Lomas Blvd. NW, Suite 200
Albuquerque, NM 87102
T: (505) 338-3945
E: csaucedo@saucedochavez.com
E: dapodaca@saucedochavez.com
*Attorneys for Plaintiffs*

17