**EAST VALLEY INJURY LAW**
1525 South Greenfield Road
Mesa, Arizona 85206
(480) 542-5000
Robert L. Greer (SBN 005372)
rlgreer@evilaw.com

**SAUCEDO HARRIGAN APODACA GRIESMEYER APODACA PC**
800 Lomas Blvd. NW, Suite 200
Albuquerque, NM 87102
(505) 338-3945
Christopher T. Saucedo (pro hac vice)
Daniel C. Apodaca (pro hac vice)
chris@shalawnm.com
daniel@shalawnm.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Griselda Sanchez, individually and on behalf of all statutory beneficiaries of Levi Sanchez-Henry, deceased<br><br>Plaintiff.<br><br>vs.<br><br>Lily Transportation Corp., Andrew Barrett, a single man.<br><br>Defendants. | **Case No.: 3:23-cv-08117-JJT**<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD PUNITIVE DAMAGES CLAIM** |

1

12146193.1

COME NOW, the Plaintiffs, by and through undersigned counsel, and hereby file this Reply in Support of their Motion for Leave to Amend Complaint to Add a Punitive Damages Claim.

**Reply**

In their Response, Defendants attempt to minimize their actions and inactions in this matter by describing the actions of Mr. Barrett as glancing down "briefly" before the accident that is the subject of this Complaint. However, the real wrongdoings of this matter occurred in the hours and months prior to the subject crash. Defendants categorize their knowledge of Mr. Barrett's driving habits to be limited to "forty-one prior triggering events for inattentive driving," which is only partially accurate. Instead, the logs provided in discovery show that there was a total of 116 "triggering events" related to Mr. Barrett's driving habits sent by the Samsara system to Lily between the period of October 27, 2021, and December 17, 2021, all of which, according to the testimony of Mr. Barrett were ignored by Lily. Lily was being provided with an average of over two alerts per day about the poor driving habits of Mr. Barrett, and instead of taking any corrective action to address those behaviors, Lily consciously disregarded the need to do so. This goes beyond the simple "failure to discipline" that Defendants attempt to cache Plaintiffs' allegations as, but instead is evidence of the "evil mind" necessary to establish punitive damages against Lily. This is further established by the expert opinion of Mr. David Stopper that "Lily Transportation exhibited a conscious indifference to the safety of the monitoring public." This conscious indifference to the safety of the monitoring public is the type of behavior which would show a "conscious disregard of a risk" sufficient under *Swift Tansp. Co. of Ariz. L.L.C. v. Carman in & for Cnty. Of Yavapai,* 253 Ariz. 499, ¶25.

In looking at the actions of Mr. Barrett, the video snippets of the minutes and hours leading up to the subject accident show that Mr. Barrett was driving distracted and would often be engaged with his phone. To what extent Mr. Barrett was engaged with his phone will likely never be known, as Plaintiffs understand that the phone used

by Mr. Barrett was deliberately wiped of all data in the two and a half hours leading up to the accident, and likely much more. Thus, Plaintiffs have been deprived of the opportunity to show a jury just what Mr. Barrett was doing with his phone in the hours and minutes leading up to the crash. Though it may be true that videos of the minutes leading up to the subject crash seemingly show that Mr. Barrett was listening to music via Spotify on his phone, this begs the question, why did Mr. Barrett find it necessary to delete all evidence on his phone if he was simply listening to Christmas music? Plaintiffs will be requesting a spoliation instruction on the issue of Mr. Barrett's destruction of evidence, and that upon the jury being provided with said instruction, it will be up to them to determine if they believe there was evidence to support a finding of "outrageous, oppressive or intolerable" conduct of Mr. Barrett sufficient to award punitive damages.

### 1. Plaintiffs' request for the addition of punitive damages is not futile.

Defendants' primary argument in opposing the filing of the First Amended Complaint is on the grounds that they believe the requested addition of punitive damages is futile. This simply is not the case. "[A] proposed amendment is futile only if no set of facts can be proven under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Defendants argue that Plaintiffs "failed to proffer any evidence that would establish a *prima facie* showing of punitive damages," seemingly arguing a summary judgment standard under Fed. R. Civ. P. Rule 56. However, "futility is most frequently at issue when the original complaint, at its core, is so factually or legally flawed that it could not be saved by any proposed amendment, and where granting leave to amend the complaint would amount to nothing more than an exercise in futility by the district court." *Melendres v. Arpaio,* 2008 WL 4174918 (D. Ariz, 2008)(internal citations and quotations omitted). As Defendants later note, the Ninth Circuit has held that leave may be denied only "if the proposed amendment…would be subject to dismissal." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018).

3

12146193.1

In the matter before this Court, the issue of punitive damages against both Defendant Barrett, and Lily is not futile and would not be subject to dismissal at the pleading stage. Taking true all facts properly pled in the First Amended Complaint, Plaintiffs have met their burden to plausibly establish a claim for punitive damages. As to Lily, Plaintiffs plea the "evil mind" as required by *Swift Transp. Co. of Ariz. L.L.C. v. Carman*, 253 Ariz. 499 (2022), by pleading that despite having a documented recording of 116 events that were triggered by the Samsara system, Lily at no point disciplined Mr. Barret, and at no point followed up or otherwise spoke with Mr. Barrett. *See generally* Proposed First Amended Complaint, ¶¶43-45. In doing so, and as noted by Plaintiffs' expert, Mr. David Stopper, Defendant Lily exhibited a "conscious indifference to the safety of the motoring public." *Id.* at *Id.* at 46. This is more than the mere reciting of legal statements of an element of a claim, but instead is the pleading of a factual basis, if proven, to establish punitive damages in the claim. Whether a jury ultimately agrees that Lily acted with a "evil mind," is a factual question that should be allowed to eventually be presented to a jury.

As to Mr. Barrett, the "evil mind" necessary to establish punitive damages is also properly pled in the First Amended Complaint. Plaintiffs' plea that Defendant Barrett was noted to have been driving while engaged with his cell phone at various times in the minutes and hours leading up to the crash. *See* First Amended Complaint, ¶49. Though Plaintiffs agree that generally speaking, as per *Swift*, engagement with a cell phone, in of itself does not establish the "evil mind." However, *Swift* doesn't eliminate the possibility that some level of severity of action, when engaged with a cell phone while driving, could establish punitive damages. *Swift*, 235 Ariz. 499, ¶30 (holding "we therefore look to the severity of [defendant's] conduct to determine whether there is 'something more' than gross negligence that evinces an evil mind.). Plaintiffs continue in the First Amended Complaint to show that the opportunity to show that "severity" was destroyed when Mr. Barrett consciously chose to destroy and wipe all evidence stored on his cell phone for at least the two and a half hours before the accident (and likely more). *See* First Amended Complaint, ¶¶51-53. Just as the question as to whether Lily was acting

4

12146193.1

with an "evil heart" is a question of fact to be decided by the jury, the question as to what Mr. Barrett is hiding in his efforts to destroy evidence, and thus whether there was "something more" as required by *Swift*, should also be decided by a jury.

### 2. No bad faith or undue delay

Defendants next suggest that the Motion for Leave to file the First Amended Complaint is nothing more than bad faith and with undue delay. As argued in the Motion, in looking at whether seeking leave was done in bad faith, a court will look to see if the actions are a mere fishing expedition, or a delay tactic. *See Johnson v. Runnels,* 2009 U.S. Dist. LEXIS 25527 (E.D. Cal. 2009). Neither of these scenarios are present with Plaintiffs' Motion for Leave. Plaintiffs are seeking to amend to allow for additional damages, and are not doing so in an attempt to delay. In fact, as Defendants note in their Response, there was a recent expansion of the fact discovery deadline to January 10, 2025, which further limits any potential claims of prejudice or delay. *See* Amended Scheduling Order (Doc. 118).

There has been no undue delay in Plaintiffs' efforts to bring forward the Motion for Leave to file the First Amended Complaint. Defendants argue that Plaintiffs were aware of the dash cam footage of Mr. Barrett over a year ago, and that the video briefly showed Mr. Barrett glancing down. Though that may be true, this only highlights that the evidence of Mr. Barrett's "evil mind" was not discovered until just recently. The initial 10-second clip leading to the accident did not give enough of a factual basis for Plaintiffs to determine or argue, without futility, that Mr. Barrett's actions rose to the level sufficient under *Swift*. Instead, the evidence of Mr. Barrett's evil mind was only established when the documents provided by Verizon on October 23, 2024, furthered the notion that Mr. Barrett has destroyed evidence on his phone. Though it may be true that evidence related to the "evil mind" of Lily has been suspected as far back as the production of the Samsara Logs and video snippets on July 23, 2024, Plaintiffs have been seeking deposition of Lily's corporate representatives since August 8, 2024, to fully establish the factual basis on that issue. The depositions of Mike Reardon (Mr. Barrett's supervisor) and Sherief Boutros (Safety Manager of Lily) continue to be

5

12146193.1

delayed, due to Defense counsel's requests for rescheduling, and efforts to otherwise limit the topics of discussion. It is anticipated that the depositions of Mr. Boutros and Mr. Reardon will further establish the "evil mind" of Lily by establishing to what extent Lily knew, and otherwise disregarded the alerts regarding Mr. Barrett's poor driving habits. As discovery is still pending on this matter, Defendants suffer no prejudice by allowing a theory of punitive damages to move forward. Should discovery show that the actions of Lily did not raise to the level under *Swift*, Defendants would still be able to bring whatever motions they see fit to limit the claims that are presented to a jury. However, Plaintiffs have determined that filing the Motion for Leave was necessary to avoid any further delay in the discovery process, and so that all parties are aware of the topics of discussion that are to occur in the upcoming depositions.

### 3. *No undue prejudice*

Defendants finally argue that the First Amended Complaint would cause undue prejudice to them, noting that they have concerns that there may need to be additional discovery on the finances of Lily, and there may need to be additional experts disclosed. Though it may be true that some additional discovery may be necessary on the issues, the overwhelming majority of discovery on this has either already been completed or is in the process of being completed through the set fact witness depositions. The First Amended Complaint does not bring forth any new theories of the case, but instead is focusing on the extent and depth of potential damages available. The only undue prejudice that has occurred in this matter, is the prejudice that Plaintiffs have faced due to Defendant's delay tactics, and Mr. Barrett's efforts to hide or destroy evidence. By allowing the Fist Amended Complaint, this Court would be actually reducing the prejudice that Plaintiffs have faced, and instead would be complying with the spirit of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities. *See Eldrige v. Block,* 832 F.2d 1132, 1135 (9th Cir. 1987).

### Conclusion

The First Amended Complaint has been carefully crafted by Plaintiffs in an effort to state plausible claims against Defendant Lily and Mr. Barrett for punitive damages,

12146193.1

given the limitations of discovery that Defendants have placed on this matter. In doing so, the First Amended Complaint is not futile, and was not filed with undue delay or in bad faith. Any prejudice that Defendants face in this matter, should the First Amended Complaint be granted, is not unfairly prejudicial, as they have been aware of the factual basis which may establish punitive damages throughout the litigation. As such, Plaintiffs respectfully ask that this Court grant the Motion for Leave to File the First Amended Complaint as said leave should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).

RESPECTFULLY SUBMITTED this 6th day of December 2024,

**SAUCEDO HARRIGAN APODACA GRIESMEYER APODACA PC**

By: */s/ Christopher T. Saucedo*
Christopher T. Saucedo
Daniel C. Apodaca
800 Lomas Blvd NW, Suite 200
Albuquerque, NM 87102
(505) 338-3945
chris@shalawnm.com
daniel@shalawnm.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of December, 2024, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

By: */s/ Christopher T. Saucedo*
       Christopher T. Saucedo

12146193.1