**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Griselda Sanchez, | No. CV-23-08117-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Lily Transportation Corporation, *et al.*, | |
| Defendants. | |

At issue is Plaintiff Griselda Sanchez's Motion for Leave to Amend the Complaint to Add Punitive Damages Claim (Doc. 115, Motion), to which Defendants Lily Transportation Corporation and Andrew Barrett filed a Response (Doc. 124, Response) and Plaintiff filed a Reply (Doc. 132, Reply). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court finds that Plaintiff's Motion is futile and therefore denies Plaintiff's request.

**I.    BACKGROUND**

This case arises out of a tragic trucking accident that occurred on December 17, 2021. Plaintiff filed her original Complaint (Doc. 1, Complaint), the current operative pleading, on June 26, 2023, alleging that Defendants' negligence caused her extensive injuries and the untimely death of her son. The Complaint, which brings four causes of action against Lily Transportation and two against Barrett, seeks only compensatory damages. (Complaint at 6–11.) The deadline for Plaintiff to amend her Complaint under

the Court's original Scheduling Order was November 17, 2023. (Doc. 21, Scheduling Order.) The parties jointly requested, and the Court granted, three discovery deadline extensions to the Scheduling Order in February, April, and November of 2024. (Docs. 26, 49, 118.) Despite these discovery extensions, the parties never sought an adjustment of the amendment deadline. Plaintiff filed the instant Motion on November 8, 2024, alongside the parties' most recent joint stipulation to extend discovery. Plaintiff's Motion seeks to amend her Complaint to include prayers for punitive damages, as well as additional factual allegations asserted in support thereof. (Motion Exhibit A at 6–9, 11, 13, 14.) Defendants object to Plaintiff's Motion on the grounds that it is futile, unduly prejudicial, and unjustifiably delayed. (Response at 4–11.)

## II.     LEGAL STANDARD

A motion to amend a complaint filed before the Rule 16 scheduling order deadline is evaluated under Rule 15(a). *See* Fed. R. Civ. P. 15(a)(2). However, if the amendment necessitates an extension of the scheduling order's deadlines, the Court will first evaluate a motion to amend under Rule 16(b)'s "good cause" standard. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–609 (9th Cir. 1992). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice of the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609; *see Noyes v. Kelly Svcs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007). "If the party seeking to amend were unable to comply with the deadline despite that party's diligence, the Court may modify the [scheduling order]." *Cano v. Schriro*, 236 F.R.D. 437, 439 (D. Ariz. 2006). However, if the party seeking amendment cannot show diligence, the inquiry ends there. *Id.*

Once "good cause" is established under Rule 16(b), the moving party must also demonstrate that the amendment is proper under Rule 15(a). *Johnson*, 975 F.2d at 608. Although the decision to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend shall be freely given when justice so

1  requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks
2  omitted). However, leave to amend is not appropriate if the "amendment would cause
3  prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay."
4  *Madeja v. Olympic Packers*, 310 F.3d 628, 636 (9th Cir. 2002) (citation and internal
5  quotation marks omitted).

**III.     ANALYSIS**

Plaintiff's Motion is based on newly obtained discovery information: video clips documenting 116 alleged driver safety violations by Barrett in the 51 days preceding the accident, received on July 23, 2024; and a subpoena response from Verizon suggesting that Barrett intentionally wiped data from his cell phone, received on October 23, 2024. (Motion at 3–5.)

Plaintiff argues that Lily's failure to discipline or take corrective action after Barrett's 116 prior infractions suggests a "conscious indifference to the safety of the motoring public" warranting punitive damages. (*Id.* Exhibit A at 8, 13, 14.) Plaintiff also claims that Barrett's deliberate spoliation of his mobile phone records reflects an "evil mindset" justifying the imposition of punitive damages. (*Id.* at 10–11.) Plaintiff asserts she could not have plausibly alleged punitive damages before obtaining this evidence, which only became available after the Scheduling Order's amendment deadline. (*Id.* at 13.)

Defendants, however, contend that Plaintiff's Motion is futile because the newly produced evidence cannot satisfy the legal threshold for punitive damages. (Response at 5–8.) Defendants further argue that Plaintiff's Motion is unduly dilatory, as she has had access to the relevant evidence since July 2024, (*id.* at 8–9), and unduly prejudicial, as adding a punitive damages prayer would necessitate additional discovery, costs, and delays, (*id.* at 10–11).

**A.     Plaintiff Demonstrates Good Cause**

To satisfy Rule 16(b)'s "good cause" standard, the movant must demonstrate: (1) that she was diligent in aiding the court in creating a feasible Rule 16 scheduling order; (2) that despite diligent efforts, her inability to comply with the Rule 16 deadline arose

from developments that were unforeseeable at the time of the scheduling conference; and (3) that she was diligent in seeking amendment of the Rule 16 order upon realizing compliance was not possible. *Morgal v. Maricopa Cnty. Bd. Of Supervisors*, 284 F.R.D. 452, 460 (D. Ariz. 2012).

The Court finds that Plaintiff has established good cause under Rule 16(b). First, no evidence suggests Plaintiff was less than diligent in assisting the Court with the initial Scheduling Order's reasonable deadlines. Second, Plaintiff's inability to meet the amendment deadline was the result of unforeseeable developments. Specifically, the video evidence and Verizon subpoena response were not available until eight and eleven months, respectively, after the deadline had passed. This newly discovered evidence provided the first concrete basis for asserting a punitive damages prayer, which Plaintiff could not have plausibly alleged before the amendment deadline. Finally, Plaintiff acted promptly upon obtaining the new evidence, filing this Motion 16 days after receiving the Verizon subpoena response. The Court finds this timeframe to be reasonable in consideration of the need to review and analyze the evidence to substantiate punitive damages prayers against both Defendants. Therefore, the Court concludes that Plaintiff has met the good cause standard under Rule 16(b).

**B.    Plaintiff's Amendment Is Not Unduly Prejudicial or Impermissibly Dilatory**

Defendants argue that granting Plaintiff's Motion would be unduly prejudicial because it comes at the close of discovery and would necessitate additional litigation costs. (Response at 10–11.) Defendants also contend that Plaintiff has been in possession of the evidence supporting a punitive damages prayer since July 2024 and could have moved to amend earlier. (*Id.* at 4.) However, the Court finds that Defendants have not demonstrated that they will suffer undue prejudice, nor that Plaintiff's Motion was improperly delayed.

The proposed Amended Complaint does not attempt to add new parties, does not allege new causes of action, and does not necessitate additional formal discovery. Plaintiff's Motion informs the Court that it is only requesting (1) the inclusion of punitive damages for Counts I, III, and IV, (Motion Exhibit A at 10–11, 13–14), and (2) the addition

1  of facts that could not have been foreseen prior to the Scheduling Order's deadline to
2  amend the Complaint. (*Id.* at 6–9.)

3        The Court is not persuaded by Defendants' contention that adding a punitive
4  damages prayer will significantly expand the scope of this litigation, (*see* Response
5  at 9–10), as the request is based on the same core allegations of conduct that have been at
6  issue throughout discovery. The addition of punitive damages does not introduce an
7  entirely new theory of liability, nor does it require Defendants to defend against unfamiliar
8  claims. Because Defendants fail to show that this amendment would require substantial
9  new discovery or fundamentally change the nature of the case, the Court concludes that the
10 proposed amendment will not cause undue prejudice. Finally, for the reasons discussed in
11 the good cause analysis *supra*, the Court finds that the proposed amendment does not create
12 undue delay.

### C. Plaintiff's Amendment Is Futile

14       An amendment is futile "only if no set of facts can be proved under the amendment
15 to the pleadings that would constitute a valid and sufficient claim or defense." *Sweaney v.*
16 *Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997) (quoting *Miller v. Rykoff-Sexton, Inc.*,
17 845 F.2d 209, 214 (9th Cir. 1988)).

18       Here, Plaintiff's proposed amendment to add prayers for punitive damages fails this
19 standard as to both Defendants. The Arizona Supreme Court has held that punitive damages
20 cannot be awarded "based on mere negligence, gross negligence, or recklessness." *Swift*
21 *Transp. Co. of Ariz. L.L.C. v. Carman*, 253 Ariz. 499, 505–506 ¶ 20 (2022). Rather, a
22 plaintiff in a negligence action must demonstrate the defendant's "evil mind" by showing
23 that his actions were outrageous and created a "substantial risk of tremendous harm to
24 others." *Id.* at 506 ¶ 22 (quoting *Volz v. Coleman Co.*, 155 Ariz. 567, 570 (1987)). That is,
25 a plaintiff must show that the defendant knowingly or intentionally disregarded an
26 unreasonable risk of harm far exceeding that which is necessary for gross negligence and
27 appreciated its severity before deliberately ignoring it. *Id.* at 507 ¶ 25. Crucially, the high
28 court held that it will be a rare case in which the same conduct giving rise to negligence or

gross negligence also demonstrates the presence of an evil mind. That is because "[i]n a claim arising out of negligence, by definition there is no intent to injure the plaintiff." *Id.* at 506 ¶ 23. Therefore, absent affirmative evidence of malice, a plaintiff will generally succeed in proving the requisite "evil mind" by demonstrating that the defendant's conduct was criminal or that the defendant continued a course of conduct with knowledge of the past harm caused by that conduct. *Id.* at 506–07 ¶¶ 23–24 & n.2.

Regarding Defendant Lily Transportation, Plaintiff argues that punitive damages are warranted based on Lily's failure to discipline or implement corrective action after receiving 116 alerts about Barrett's driving infractions through the Samsara Drive Cam system. (Motion Exhibit A at 13–14.) Even if true, these allegations demonstrate, at most, gross negligence in Lily's supervision of Barrett. While Lily's alleged inaction may show poor judgment or deficient management, it does not rise to the level of outrageous conduct required under *Swift*. First, Plaintiff has not alleged facts suggesting that Lily actually appreciated the substantial risk of tremendous harm created by its failure to act on these alerts. *See Swift*, 253 Ariz. at 507 ¶ 25 ("[T]he defendant must have *actually* appreciated the severity of the risk before *consciously* disregarding it." (emphasis in original)). Furthermore, failure to discipline an employee, even one with a known history of infractions, does not evince a conscious disregard of a risk of harm "substantially greater than necessary to make . . . conduct negligent or even grossly negligent." *Id.* Despite Lily's lack of corrective action, the fact that the company maintained a system to monitor driver infractions suggests negligent supervision rather than the conscious pursuit of conduct known to create a substantial risk of significant harm.

As to Defendant Barrett, while his alleged phone use is more culpable than the hands-free phone use at issue in *Swift*, it still falls short of the standard for punitive damages. The use of a cell phone when driving, though dangerous and prohibited by statute, is punishable only by civil penalty. A.R.S. § 28-914(D). Although the absence of criminal penalties is not dispositive, it supports a finding that such conduct, without more, is not sufficiently outrageous to warrant punitive damages. *Swift*, 253 Ariz. at 506 ¶ 24 ("A

'substantial risk of harm' is the product of outrageous conduct, which society typically deters by imposing criminal liability."). Moreover, if Barrett's phone use constitutes the "evil hand" of tortious conduct, Plaintiff has not alleged facts suggesting Barrett possessed the requisite "evil mind"—that is, that he actually appreciated that his phone use created a substantial risk of tremendous harm beyond the ordinary risks of distracted driving.

Finally, Plaintiff argues that Barrett's alleged post-accident spoliation of phone data permits an inference that his pre-accident conduct was sufficiently outrageous to warrant punitive damages. (Motion at 5.) This argument fails for two reasons. First, direct evidence from the video footage already establishes the nature of Barrett's tortious conduct—using his phone while driving. While the deleted phone data might have revealed exactly what Barrett was doing on his phone, that additional detail could not transform the fundamental character of his proven conduct into the sort of outrageous behavior necessary to establish an "evil mind" under *Swift*. In other words, a spoliation inference cannot transform conduct establishing negligence liability into the qualitatively different showing of outrageous conduct required to demonstrate an "evil mind." Second, even if Barrett's alleged spoliation was undertaken with an "evil mind," that mental state would have necessarily manifested after the accident occurred. Under *Swift*, the evil mind must exist contemporaneously with the tortious conduct itself. *Swift*, 253 Ariz. at 506 ¶ 22 (punitive damages require that the defendant engaged in tortious conduct while acting with an evil mind). Subsequent attempts to conceal evidence, while potentially sanctionable through other means, cannot retroactively establish the mental state required for punitive damages. Because Plaintiff has not alleged sufficient facts to meet *Swift*'s punitive damages standard as to either Defendant, the Court finds that Plaintiff's proposed amendment is futile.

**IT IS THEREFORE ORDERED** denying Plaintiff's Motion for Leave to Amend Complaint to Add Punitive Damages Claim (Doc. 115).

Dated this 12th day of February, 2025.

Honorable John J. Tuchi
United States District Judge

- 7 -